IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KELVIN SUMPTER, MARIA PRUETT, SHYLA MITCHELL and GREGORY SEWELL<br><br>*Plaintiffs*,<br><br>v.<br><br>I.C. SYSTEMS, INC.<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§ Case No. 4:17-cv-1269<br>§<br>§<br>§ COMPLAINT AND DEMAND<br>§ FOR JURY TRIAL<br>§<br>§ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, KELVIN SUMPTER, MARIA PRUETT, SHYLA MITCHELL and GREGORY SEWELL, ("Plaintiffs"), bring this action against Defendant I.C. SYSTEMS, INC. ("Defendant" or "IC Systems") to stop Defendant's practice of aggressive and illegal debt collection calls to the cellular telephones of Plaintiffs, and to obtain redress for injuries from Defendant's conduct. Each Plaintiff alleges the conduct and acts of others upon information and belief only, including investigation conducted by counsel.

### INTRODUCTION

1. Plaintiffs bring this action, as shown in their respective allegations, pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

2. Defendant is a major, nationwide debt collection company that engages in reckless and aggressive debt collection practices in derogation of controlling federal and state statutes and the rights of the called parties.

3. Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA. Defendant made the calls in each case without valid authority, using an Automatic Telephone Dialing System ("ATDS") or pre-recorded voice. Defendant continued to make these illegal calls after each respective Plaintiff stated she did not wish to be called again.

4. Defendant's conduct violates the TCPA. Plaintiff are entitled to actual damages, attorneys' fees, costs of court, expert fees, deposition costs, and treble damages for each and every such knowing violation.

## PARTIES

5. Plaintiff Kelvin Sumpter is a natural person and a resident of Houston, TX.

6. Plaintiff Maria Pruett is a natural person and a resident of Corpus Christi, TX.

7. Plaintiff Shyla Mitchell is a natural person and a resident of Glassport, PA.

8. Plaintiff Gregory Sewell is a natural person and a resident of Philadelphia, PA.

9. Defendant is a corporation organized under the laws of the State of Minnesota. Defendant maintains its principal office in Vadnais Heights, Minnesota, and may be served with process through its Chief Executive Officer, John Erickson IV, at 444 Hwy 96 E Vadnais Heights, MN 55127–2557.

10. All allegations herein of acts or omissions by a Defendant include, but are not limited to, acts and omissions of such Defendant's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were committed or made with express and/or implied authority of the Defendant, or were ratified or otherwise approved by the same Defendant; or otherwise that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment, as the case may be.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

12. The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Furthermore, the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

13. Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or pre-recorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an ATDS or an artificial or pre-recorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[1] Calls that include non-marketing messages require consent, but not written consent. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or pre-recorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

14.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

15.     The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to

the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

16. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). *See* 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

17. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or pre-recorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

18. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## JOINDER

19. Rule 20 of the Federal Rules of Civil Procedure provides, in part: (a) PERSONS WHO MAY JOIN OR BE JOINED.

20. (1) Plaintiffs. Persons may join in one action as plaintiffs if:

   (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

   (B) any question of law or fact common to all plaintiffs will arise in the action. *See* Fed. R. Civ. P. 20(a).is Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

21. "Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *See United Mineworkers of Am. V. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138 (1966).

22. Rule 20 is "designed to permit the joinder of plaintiffs or defendants whenever there is a common question of law or fact and the right to relief arises out of a single transaction or occurrence or a series of transactions or occurrences." *Walker v. City of Houston,* 341 F. Supp. 1124, 1132 (S.D. Tex. 1971).

23. A 'series of transactions or occurrences,' means some connection or logical relationship between various transactions or occurrences such as a 'nucleus of operative facts or law.'" *Breidel v. Harris Cnty. Sheriff's Ofc*., 2014 U.S. Dist. LEXIS 108542, *9 (S.D. Tex. Aug. 6, 2014); quoting *Hanley v. First Investors Corp*., 151 F.R.D. 76, 79 (E.D. Tex. 1993). "Rule 20

is intended to be liberally construed in order to promote trial convenience." *Breidel,* 2014 U.S. *Dist. LEXIS, at \*9; citing Walker,* 341 F. Supp., at 1132.

24. "The common question need not predominate; that's a requirement for class actions; not for permissive joinder." *See Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011); *Fidelity Nat'l Title Co. v. U.S. Small Bus. Admin.,* 2014 U.S. Dist. LEXIS 65380, \*25 (E.D. Cal. May 12, 2014).

25. Allegations of a "company-wide policy" that violates federal law have been held sufficient to establish that multiple plaintiffs' claims "arise out of the same series of transactions or occurrences." *See, e.g., Afabor v. RaceTrac Petroleum, Inc.,* 2006 U.S. Dist. LEXIS 33045, \*11 (N.D. Tex. May 15, 2006); *citing King v. Ralston Purina Co*., 97 F.R.D. 477 (W.D.N.C. 1983) ("Common sense says that claims alleged to be part of a 'pattern and practice' satisfy both the 'transaction' and the 'common question' requisites of Rule 20(a).").

## ALLEGATIONS OF FACT COMMON TO ALL PLAINTIFFS

26. At all times relevant to this action, I.C. Systems collected consumer debts.

27. Each Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3).

28. I.C. Systems used a predictive dialer system for all Plaintiffs.

29. Before I.C. Systems began contacting each Plaintiff, it and each Plaintiff had no prior business relationship and each Plaintiff never provided express consent to I.C. Systems to be contacted on his/her cellular telephone.

30. I.C. Systems regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

31. The principal source of I.C. Systems's revenue is debt collection.

32. I.C. Systems is a "debt collector" as defined by 15 U.S.C. §1692a(6).

33. As described, infra, I.C. Systems contacted each Plaintiff to collect a debt that was incurred primarily for personal, family, or household purposes.

34. Within the past twelve (12) months, I.C. Systems called each Plaintiff on multiple occasions in connection with the collection of a debt. On several occasions, within the past forty-eight (48) months, the dates of which will be discovered through discovery, I.C. Systems willingly and knowingly used an automatic telephone dialing system (ATDS) to call Plaintiffs on his or her cellular phone multiple times in violation of the TCPA

35. Each Plaintiff, on at least one occasion, communicated his or her desire that I.C. Systems cease calling him or her.

36. Notwithstanding these communications, I.C. Systems continued to call each Plaintiff in connection with the collection of a debt.

37. I.C. Systems's policy and practice does not adequately address or disregards consumer's express desire that I.C. Systems stop calling, and each Plaintiff in this case has been harmed by this policy and practice.

38. I.C. Systems's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of consumers such as Plaintiffs.

39. I.C. Systems unreasonably relied upon inaccurate information provided to I.C. Systems by one or more original creditors for whom I.C. Systems was attempting to collect a debt when I.C. Systems called certain Plaintiffs' cellular telephone.

## LEGAL ARGUMENTS COMMON TO ALL PLAINTIFFS

40. The TCPA (at 47 U.S.C. § 227(b)(3) provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

41. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[s], rule or regulation...." 47 U.S.C. § 312(f).

42. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

43. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview,* 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

### ADDITIONAL FACTORS SUPPORTING JOINDER

44. The witness(es) that I.C. Systems will produce in response to a notice of deposition pursuant to Rule 30(b)(6) will likely be the same individual(s) for each Plaintiff.

45. The information that I.C. Systems will provide in response to interrogatories related to I.C. Systems's policies, practices, and procedures will likely be the same, or substantially similar, for each Plaintiff.

46. The evidence that I.C. Systems will produce in response to requests for production of documents related to I.C. Systems's policies, practices and procedures will likely be the same, or substantially overlap across the several Plaintiffs.

47. Joinder will allow a single trier of fact to assess the pattern and frequency of I.C. Systems's alleged misconduct, which is a relevant factor in the legal issues and damages in this case.

48. Joinder avoids the need to conduct multiple trials and empanel multiple juries to resolve each Plaintiffs' fairly straightforward claim that I.C. Systems violated the TCPA or any other asserted statute.

### FACTS SPECIFIC TO EACH PLAINTIFF – KELVIN SUMTER

49. Between and around from July 2015 to October 2015, Plaintiff Sumter received at least 18 calls on his mobile telephone with number ending -1937, from 307-316-7474, a number associated with Defendant.

50. Sumter is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -1937.

51. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1). Each call, when answered, was preceded by a pause or "dead air" before a pre-recorded voice came online.

52. On information and belief, Defendant's ATDS called Sumter on every occasion.

53. Sumter felt the calls were an invasion of his privacy and, as he told Defendant, wanted the calls to stop. To the extent Defendant had any consent to call Sumter, he revoked such consent but Defendant continued to call.

54. Sumter's -1937 number is assigned to a cellular telephone service for which he loses minutes he paid for under 47 U.S.C. § 227(b)(1).

55. Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1(A)(i).

56. All calls Defendant made to Sumter violate 47 U.S.C. § 227.

### FACTS SPECIFIC TO EACH PLAINTIFF – MARIA PRUETT

57. Between and around from May 2015 to June 2015, Plaintiff Pruett received at least 30 calls on her mobile telephone with number ending -1249, from 208-515-7484, a number associated with Defendant.

58. Pruett is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -1249.

59. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1). Each call, when answered, was preceded by a pause or "dead air" before a pre-recorded voice came online.

60. On information and belief, Defendant's ATDS called Pruett on every occasion.

61. Pruett felt the calls were an invasion of her privacy and were without her consent.

62. Pruett's -1249 number is assigned to a cellular telephone service for which she loses minutes she paid for under 47 U.S.C. § 227(b)(1).

63. Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1(A)(i).

64. All calls Defendant made to Pruett violate 47 U.S.C. § 227.

**FACTS SPECIFIC TO EACH PLAINTIFF – SHYLA MITCHELL**

65. From May 2015 to July 2015, Plaintiff Mitchell received at least 52 calls on her mobile telephone with number ending -3422, from 208-843-1999, a number associated with Defendant.

66. Mitchell is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -3422.

67. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1). Each call, when answered, was preceded by a pause or "dead air" before a live representative came online to initiate conversation. The calls involved pre-recorded or artificial voice, and continued in spite of Mitchell's request to stop (indicating a computerized or automatic dialing program).

68. On information and belief, Defendant's ATDS called Mitchell on every occasion.

69. Defendant's representative asked for a person not Mitchell or the regular carrier and exclusive user of the cellular phone with number ending -3422.

70. Mitchell felt the calls were an invasion of her privacy and wanted the calls to stop. Defendant had no consent to call her with an ATDS and to the extent Defendant did, the consent was revoked.

71. Mitchell's -3422 number is assigned to a cellular telephone service for which she loses minutes she paid for under 47 U.S.C. § 227(b)(1).

72. Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1(A)(i).

73. All calls Defendant made to Mitchell violate 47 U.S.C. § 227.

**FACTS SPECIFIC TO EACH PLAINTIFF – GREGORY SEWELL**

74. In and around January 2016, Plaintiff Sewell received at least 25 calls on his mobile telephone with number ending -6719, from 703-291-9034, a number associated with Defendant.

75. Sewell is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -6719.

76. Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1). Each call, when answered, was preceded by a pause or "dead air" before a live representative came online to initiate conversation. The calls involved pre-recorded or artificial voice, and continued in spite of Sewell's request to stop (indicating a computerized or automatic dialing program).

77. On information and belief, Defendant's ATDS called Sewell on every occasion.

78. Defendant's representative asked for a person not Sewell or the regular carrier and exclusive user of the cellular phone with number ending -6719.

79. Sewell felt the calls were an invasion of his privacy and, as he told Defendant, wanted the calls to stop. Defendant called Sewell repeatedly without diligently ensuring that the debt it sought to collect was owed by Sewell.

80. Sewell's -6719 number is assigned to a cellular telephone service for which he loses minutes he paid for under 47 U.S.C. § 227(b)(1).

81. Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1(A)(i).

82. All calls Defendant made to Sewell violate 47 U.S.C. § 227.

## FIRST CAUSE OF ACTION
(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,
47 U.S.C. § 227 *ET SEQ.*)

83. Plaintiffs hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

84. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. § 64.1200, *et seq.*

85. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

86. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
(KNOWING AND/OR WILLFUL VIOLATION OF
THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*)

87. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

88. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

89. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

90. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## JURY DEMAND

60. Plaintiffs demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- Actual damages, including mental anguish; and

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing Systems to cellular phones, and enjoining Defendant from engaging in abusive and oppressive collection practices as outlined in this Complaint.

Dated: April 25, 2017							Respectfully submitted,

                 */s/ Jarrett L. Ellzey*_____
                 W. Craft Hughes
                 Jarrett L. Ellzey
                 Deola T. Ali
                 **HUGHES ELLZEY, LLP**
                 2700 Post Oak Blvd., Suite 1120
                 Galleria Tower I
                 Houston, TX 77056
                 Phone: (713) 554-2377
                 Fax: (888) 995-3335
                 E-Mail: craft@hughesellzey.com
                    jarrett@hughesellzey.com
                    deola@hughesellzey.com

                 **ATTORNEYS FOR PLAINTIFFS**